UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DAVID BOLLINGER,

    Petitioner,

v.

RENEE BAKER, et al.,

    Respondents.

Case No. 2:98-cv-01263-MMD-PAL

ORDER

## I. INTRODUCTION

This action is a petition for a writ of habeas corpus by David Bollinger, a Nevada prisoner sentenced to death. There are, before the Court, motions to dismiss Bollinger's third amended habeas corpus petition and for partial summary judgment. In this order, the Court resolves those motions, granting the motion to dismiss in part and denying it in part, and denying the motion for summary judgment.

## II. BACKGROUND FACTS AND PROCEDURAL HISTORY

The following is from the Nevada Supreme Court's August 24, 1995, opinion on Bollinger's direct appeal:

> David A. Bollinger ("Bollinger") was convicted of two counts of murder in the first degree for killing Rose and James Vertrees ("the Vertreeses"), two counts of kidnapping, two counts of robbery, and one count of burglary. Bollinger, and possibly an accomplice identified as Tom Johnston ("Johnston"), robbed the Vertreeses in their motor home in Reno. After beating the Vertreeses to death, Bollinger, or he and Johnston, set fire to the Vertreeses' bodies at a rest-stop in Rifle, Colorado. [Footnote: Johnston's name came up occasionally at trial. Although this shadowy character may have participated in the crimes, the State suggested that possibly only Bollinger committed the crimes.

> Indeed, police officers never found Johnston or proof of his existence.] After being arrested in Colorado, Bollinger placed a tattoo on his shoulder which read "Pyro," the nickname inmates had given him.
>
> After empaneling a jury, the district court admonished jurors, pursuant to NRS 175.401, to refrain from talking about the trial and to avoid coming into contact with the media. During trial, however, the district court often failed to admonish the jury before adjourning. At the conclusion of the trial, the district court issued the following instruction based upon the statutory definition of reasonable doubt:
>
> * * *
>
> With respect to Rose's murder, the jury found Bollinger worthy of death. In support of this finding, the jury found no mitigating factors but selected all three possible aggravating factors: (1) Bollinger was under sentence of imprisonment at the time, (2) Bollinger committed the crime while engaged in or in flight from a robbery, burglary, or kidnapping, and (3) the murder was committed to avoid lawful arrest.
>
> With respect to James' murder, the jury found that Bollinger should be imprisoned for life without the possibility of parole. In support of this finding, the jury found the following two mitigating factors: (1) Bollinger had no significant criminal history, and (2) "other mitigating circumstance" existed. In addition, the jury did not select any of the three possible aggravating factors that it selected regarding Rose's murder.

*Bollinger v. State*, 111 Nev. 1110, 1112-14, 901 P.2d 671, 672-74 (1995).

The Nevada Supreme Court affirmed the judgment of conviction and death sentence on August 24, 1995. *Bollinger*, 111 Nev. at 1117, 705 P.2d at 676.

Bollinger filed his first state court habeas corpus petition on September 12, 1996. Exhibit 263 (dkt. no. 196-1).[1] The state district court held an evidentiary hearing on March 3 and 4, 1997. Exhibits 267, 281 (dkt. nos. 197, 197-1, 199-1). The petition was denied on May 7, 1997. Exhibit 270 (dkt. no. 198).

Bollinger appealed. Exhibits H, I, J (dkt. no. 217). The Nevada Supreme Court dismissed the appeal on July 28, 1998. Exhibit K (dkt. no. 217).

Bollinger then initiated this federal habeas corpus action on September 9, 1998. Counsel was appointed, discovery proceedings ensued, and a first amended habeas

---

[1] Exhibits identified by number (*E.g.* "Exhibit 1") are located in the record at dkt. nos. 169-208, and 226. Exhibits identified by letter (*E.g.* "Exhibit A") are located in the record at dkt. no. 217. Citations to the location of exhibits in the record are provided, in parentheses.

2

petition (dkt. no. 39) was filed on February 29, 2000. After extensive discovery proceedings, Bollinger filed a second amended habeas petition (dkt. no. 110) on October 29, 2004. On June 22, 2005, respondents filed a motion to dismiss and motion for summary judgment (dkt. nos. 124, 125, 126), asserting that several claims in the second amended petition were not exhausted in state court. Then, on October 5, 2005, the parties submitted a stipulation to stay the case pending Bollinger's exhaustion of claims in state court (dkt. no. 130). The Court approved that stipulation, and stayed this action on October 13, 2005 (dkt. no. 130).

On November 14, 2005, Bollinger filed a second state habeas petition. Exhibit 273 (dkt. nos. 198-1, 198-2, 198-3). The State moved to dismiss. Exhibit 283 (dkt. no. 199-2). The state district court dismissed the petition on October 10, 2007. Exhibit 290 (dkt. no. 199-3). Bollinger appealed. Exhibits 292, 293, 294 (dkt. nos. 199-4 - 200). The Nevada Supreme Court affirmed the state district court's ruling on September 20, 2011. Exhibit 295 (dkt. no. 201). Rehearing was denied on December 20, 2011. Exhibit 297 (dkt. no. 201).

On March 12, 2012, the stay of this federal habeas action was lifted (dkt. no. 152). On September 14, 2012, Bollinger filed a third amended habeas petition (dkt. no. 168), which is now the operative petition in this case.[2]

On March 12, 2013, respondents filed their motions to dismiss and for partial summary judgment (dkt. nos. 215, 216).[3] Bollinger filed an opposition to those motions on September 12, 2013 (dkt. no. 225). Respondents replied on November 27, 2013 (dkt. no. 231).

///

---

[2] The claims referenced in this order are the claims asserted in the third amended habeas petition, unless otherwise stated.

[3] Respondents' motions to dismiss and for partial summary judgment are contained in one document. That document was filed and docketed twice, reflecting that it includes both a motion to dismiss and a motion for summary judgment. In this order, the Court cites the document containing respondents' motions as "Motions to Dismiss and for Partial Summary Judgment (dkt. nos. 215, 216)."

In their motions, respondents raise four main arguments: (1) several claims in Bollinger's third amended petition are unexhausted in state court, (2) several claims are procedurally defaulted, (3) several claims fail to state a cognizable claim for federal habeas corpus relief, and (4) several claims were waived in Bollinger's state court proceedings.

### III. EXHAUSTION

Respondents argue that all the claims in Bollinger's third amended petition except Claim 14F are unexhausted in state court. *See* Motions to Dismiss and for Partial Summary Judgment (dkt. nos. 215, 216), pp. 29-33. Bollinger argues, in response, that he has exhausted all his claims. *See* Opposition to Motions to Dismiss and for Partial Summary Judgment (dkt no. 225), p. 3. The Court finds that Bollinger has exhausted in state court all the claims in his third amended petition. A federal court may not grant habeas corpus relief on a claim not exhausted in state court. 28 U.S.C. § 2254(b). The exhaustion doctrine is based on the policy of federal-state comity, and is intended to allow state courts the initial opportunity to correct constitutional deprivations. *See Picard v. Conner*, 404 U.S. 270, 275 (1971). To exhaust a claim, a petitioner generally must fairly present the claim to the highest state court, and must give that court the opportunity to address and resolve it. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*per curiam*); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

Bollinger argues that part of Claim 7 was exhausted on his direct appeal. Opposition to Motions to Dismiss and for Partial Summary Judgment, p. 2. Specifically, Bollinger points to part of Claim 7 in which he claims that his federal constitutional rights were violated because the trial judge was not impartial. *See id.*; *see also* Third Amended Petition, pp. 127-34. In that part of Claim 7, Bollinger mentions, as indications of the trial judge's bias, the judge's alleged failure to adequately admonish the jury concerning news media coverage of the trial (Third Amended Petition, p. 132), and the judge's alleged failure to exclude evidence concerning Bollinger's tattoo of the word "Pyro" (Third Amended Petition, p. 133). Bollinger argues those parts of Claim 7 were

exhausted on his direct appeal. *See* Opposition to Motions to Dismiss and for Partial Summary Judgment, p. 2. This argument is without merit. On his direct appeal, Bollinger did not argue that the trial judge was biased, and, with regard to the issue of the judge's admonishments regarding media coverage and the judge's admission of evidence of the tattoo, Bollinger raised no federal constitutional issue. *See* Appellant's Opening Brief, Exhibit 258 (dkt. no. 196), pp. 9-13, 20-22. Claim 7, therefore, was not exhausted on Bollinger's direct appeal, but, as is discussed below, was one of the claims exhausted only in Bollinger's second state habeas petition.

Claim 14F in Bollinger's third amended petition is a claim that the jury instruction given by the trial court regarding "reasonable doubt" was unconstitutional. *See* Third Amended Petition (dkt. no. 168), pp. 160-62. Bollinger exhausted that claim on his direct appeal. *See* Appellant's Opening Brief, Exhibit 258 (dkt. no. 196), pp. 13-20.

Claim 18 is a claim that Bollinger's appellate counsel was ineffective. *See* Third Amended Petition, pp. 195-98. Claim 18 includes a claim that Bollinger's appellate counsel was ineffective for failing to raise the claims set forth in his third amended petition in this action. *See id.* at 195. Claim 18 and Claim 2, therefore, when read together, include a claim that Bollinger's appellate counsel was ineffective for failing to raise a claim that the trial court did not have jurisdiction. *See id.* at 58-62. Bollinger exhausted this claim in his first state habeas action. *See* Appellant's Opening Brief, Exhibit H (dkt. no. 217-2), pp. 19-22.

Claim 18, when read together with Claim 2, also includes a claim that Bollinger's appellate counsel was ineffective for failing to raise a claim that the transfer of Bollinger's case from Colorado to Nevada resulted in a violation of Bollinger's right to a speedy trial. *See* Third Amended Petition, pp. 63-64, 195-98. Bollinger exhausted this claim, as well, in his first state habeas action. *See* Appellant's Opening Brief, Exhibit H (dkt. no. 217-2), pp. 22-25.

///
///

All the claims in Bollinger's third amended petition other than the claim regarding the reasonable doubt instruction (Claim 14F) and the two claims of ineffective assistance of appellate counsel described above (parts of Claim 18) were exhausted by Bollinger only in his second state habeas action. *See* Petition for Writ of Habeas Corpus, Exhibit 273 (dkt. nos. 198-1, 198-2, 198-3); *see also* Third Amended Petition, pp. 5-7; Opposition to Motions to Dismiss and for Partial Summary Judgment, p. 3.

Respondents argue that these claims — the claims Bollinger raised only in his second state habeas action — are not exhausted. *See* Motions to Dismiss and for Partial Summary Judgment (dkt. nos. 215, 216), pp. 29-33. Respondents acknowledge that Bollinger raised all the claims in his third amended petition in the state district court in his second state habeas action, but argue that Bollinger abandoned all those claims on appeal. *See id.* Respondents point out that, on the appeal in the second state habeas action, the argument of the parties concerned procedural issues and the merits of Bollinger's claims were not briefed. *See id.* In the second state habeas action, the district court dismissed all Bollinger's claims on procedural grounds. *See* Order, Exhibit 290 (dkt. no. 199-3). On appeal, then, the argument of the parties naturally concerned the procedural rulings of the state district court, and not the merits of the dismissed claims. *See* Appellant's Opening Brief, Exhibit 292 (dkt. nos. 199-4, 199-5, 199-6, 199-7). Under these circumstances, the claims that Bollinger raised in his second state habeas action are exhausted, but, as is explained below, they are also procedurally defaulted. Procedurally defaulted claims are exhausted; there is no further remedy available in state court with respect to such claims. *See Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir.2011), *cert. denied*, 132 S.Ct. 558 (2011) (finding that if state courts will not hear a petitioner's claims on their merits because of failure to comply with a state procedural rule, the claims are "technically exhausted" and procedurally defaulted).

///

///

## IV. PROCEDURAL DEFAULT

### A. Legal Standards

In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with the state's procedural requirements in presenting his claims is barred from obtaining a writ of habeas corpus in federal court by the adequate and independent state ground doctrine. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), *citing United States v. Frady*, 456 U.S. 152, 170 (1982).

As the court understands respondents' argument, they assert that all the claims that Bollinger exhausted only in his second state habeas action ─ that is, all the claims in his third amended petition other than the claim regarding the reasonable doubt instruction (Claim 14F) and the two claims of ineffective assistance of appellate counsel

described above (part of Claim 18) (*see* discussion regarding exhaustion, *supra*) — are procedurally defaulted and should be dismissed on that ground. *See* Motions to Dismiss and for Partial Summary Judgment, pp. 33-44.

### B. The Procedural Default

Bollinger presented all the claims that now appear in his third amended petition in his second state habeas petition. *See* Petition for Writ of Habeas Corpus, Exhibit 273 (dkt. nos. 198-1, 198-2, 198-3); *see also* Third Amended Petition, pp. 5-7; Opposition to Motions to Dismiss and for Partial Summary Judgment, p. 3. On October 10, 2007, the state district court dismissed all Bollinger's claims on procedural grounds. *See* Order, Exhibit 290 (dkt. no. 199-3). Bollinger appealed, and the Nevada Supreme Court affirmed. Exhibits 292, 293, 294, 295, 297 (dkt. nos. 199-4 - 201). In doing so, the Nevada Supreme Court addressed only Bollinger's procedural default, ruling that Bollinger could not overcome the default; it did not address any of Bollinger's claims on their merits. *See id.* Therefore, all the claims exhausted by Bollinger only in his second state habeas action are subject to the procedural default doctrine.

This applies to all of Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14A, 14B, 14C, 14D, 14E, 14G, 15, 16, 17, all of Claim 18 except the claims that Bollinger's appellate counsel was ineffective for failing to raise a claim that the trial court did not have jurisdiction and that Bollinger's appellate counsel was ineffective for failing to raise a claim that the transfer of Bollinger's case from Colorado to Nevada resulted in a violation of Bollinger's right to a speedy trial, and all of Claim 19. Those claims are barred by the procedural default doctrine, unless Bollinger can show otherwise. Below, the Court addresses the arguments of the parties with respect to the adequacy of the state procedural rule to support the procedural default defense, and with respect to the application of the procedural default defense to certain of Bollinger's claims.

### C. Adequacy of the State Procedural Rule

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States*

8

*Dist. Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted); *see also Ford v. Georgia*, 498 U.S. 411, 424 (1991) (State procedural rule adequate if "firmly established and regularly followed by the time as of which it is to be applied." (citation and internal quotation marks omitted)); *Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir.2001).

In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test for analyzing adequacy. Under *Bennett*, the State carries the initial burden of pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Bennett*, 322 F.3d at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id*. If the petitioner meets this burden, "the ultimate burden" of proving the adequacy of the procedural rule rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id*.; *see also King v. Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006).

In this case, respondents meet their initial burden under *Bennett* by asserting that the Nevada Supreme Court's application of NRS 34.726, the state-law one-year statute of limitations for habeas actions, constituted an independent and adequate state procedural ground for denying relief. *See* Motions to Dismiss and for Partial Summary Judgment, pp. 33-44.[4]

In response, Bollinger challenges the adequacy of NRS 34.726.  *See* Opposition to Motions to Dismiss and for Partial Summary Judgment, pp. 20-26.

---

[4]In asserting their procedural default argument, respondents do not appear to rely on the state courts' application of NRS 34.800 or 34.810. With respect to NRS 34.810 (successive petitions), this is presumably because the Ninth Circuit Court of Appeals has held that statute to be inadequate to support the procedural default defense in federal court. *See Valerio v. Crawford*, 306 F.3d 742, 777-78 (9th Cir. 2002). At any rate, respondents meet their burden with respect to their assertion that NRS 34.726 constituted an independent and adequate bar to federal habeas review, and the analysis proceeds with respect to the state courts' application of that statute.

9

Bollinger's default occurred in 1996, one year after his direct appeal was concluded. The Ninth Circuit Court of Appeals has rejected the argument that the Nevada Supreme Court inconsistently applied NRS 34.726 at that time, and has held that it was then adequate to support a procedural bar. *See Loveland v. Hatcher*, 231 F.3d 640, 642-63 (9th Cir. 2000) (regarding NRS 34.726, as of 1993); *Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996) (regarding NRS 34.726, as of 1996). Bollinger has not met his burden, to assert specific factual allegations that demonstrate the inadequacy of the state procedural rule. Bollinger has not asserted any argument, and has made no showing, to undermine the Ninth Circuit's ruling that NRS 34.726 was consistently applied, and adequate to support a procedural default, at the time of Bollinger's default in this case.

This Court, therefore, follows *Moran* and *Loveland*, and rules that NRS 34.726 was adequate to support the procedural default defense asserted by respondents.

### D.     Good Cause/Claims of Ineffective Assistance of Trial Counsel

With respect to the procedural default of the claims of ineffective assistance of trial counsel that he raised in state court only in his second state habeas action, Bollinger argues, relying upon *Martinez v. Ryan*, ___ U.S. ___, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), that ineffective assistance of counsel in his first state habeas action constitutes cause for the procedural default. *See* Opposition to Motions to Dismiss and for Partial Summary Judgment, pp. 29-57.

In *Martinez*, the Supreme Court noted that it had previously held, in *Coleman v. Thompson*, 501 U.S. 722, 746-47 (1991), that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse procedural default. *Martinez*, 132 S.Ct. at 1319. The court in *Martinez* then "qualif[ied] *Coleman* by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. The court described "initial-review

///

collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id.*

In *Martinez*, the petitioner's procedural default was based on an Arizona rule barring successive petitions; as such, the petitioner's procedural default was complete when counsel in the initial-review collateral proceeding failed to raise certain claims. *See Martinez*, 132 S.Ct. at 1314. The procedural default at issue in this case is different. Bollinger's procedural default is based on the statute of limitations in NRS § 34.726. The procedural default occurred because Bollinger delayed for ten (10) years, after his direct appeal ended in 1995, before he initiated his second state habeas action in 2005, asserting the claims now held to be procedurally defaulted. *See* Order of Affirmance, Exhibit 295, pp. 2-3. The attorney who represented Bollinger in his first state habeas action represented Bollinger for only about two (2) years, while Bollinger's first state habeas action was pending, a relatively small portion of the time over which the statute of limitations default occurred. Ineffective assistance of Bollinger's first state post-conviction counsel does not explain the ten-year delay that led to Bollinger's default under NRS § 34.726. In short, there is an insufficient causal connection between the alleged ineffective assistance of Bollinger's first post-conviction counsel and the procedural default at issue in this case. Ineffective assistance of counsel in Bollinger's first state habeas action does not function as cause for the procedural default of the claims of ineffective assistance of trial counsel raised in Bollinger's second state habeas action.

### E. Independence of the Nevada Supreme Court's Ruling

#### i. Claim 4

Claim 4 of Bollinger's third amended petition is a claim based on *Polk v. Sandoval*, 503 F.3d 903 (9th Cir.2007), and *Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000), that his constitutional rights were violated on account of the "trial court's failure to properly instruct the jury concerning the elements of the capital offense." Third Amended Petition, p. 67.

Bollinger argues that the Nevada Supreme Court's dismissal of the claim was not a default ruling, but was a ruling on the merits, and, at any rate, to the extent that it was a default ruling, it was inadequate. *See* Opposition to Motions to Dismiss and for Partial Summary Judgment, pp. 6-16. Bollinger's argument is without merit.

First, the Nevada Supreme Court only addressed Bollinger's procedural default, finding that the claim was procedurally defaulted, and that Bollinger did not make a showing of good cause and prejudice to overcome that default. *See* Order of Affirmance, Exhibit 295, p. 4 ("Therefore, the district court did not err in concluding that Bollinger could not demonstrate good cause and prejudice to overcome the applicable procedural bars with respect to this claim.").

Second, Bollinger's argument that the procedural rule is inadequate is foreclosed by *Babb v. Lozowsky,* 719 F.3d 1019 (9th Cir.2013), in which the court of appeals ruled that *Polk* was undermined by *Nika v. State*, 124 Nev. 1272, 198 P.3d 839, 849 (2008). *See Babb*, 719 F.3d at 1027-28. The court in *Babb* explained:

> According to *Nika*, this Court in *Polk* was wrong in concluding that the *Kazalyn* instruction was a violation of due process because the instruction accurately represented the elements of first degree murder up until *Byford* was decided. Thus, before *Byford* was decided, the *Kazalyn* instruction did not improperly relieve the State of the burden of proving all the elements of first degree murder.

*Babb*, 719 F.3d at 1028. Bollinger's conviction became final long before *Byford was* decided. Therefore, after *Babb*, there is no viable argument that the *Polk* decision gave rise to any claim for relief for Bollinger. The Nevada cases cited by Bollinger, in an attempt to show the procedural rule to be inadequate, predate the *Babb* decision. *See* Opposition to Motions to Dismiss and for Partial Summary Judgment, pp. 14-15. Bollinger makes no showing that the procedural bar was inadequate with respect to its application to this claim.

Claim 4 is procedurally defaulted.

///

///

12

### ii. Claim 5

Claim 5 is a claim that Bollinger's constitutional rights were violated because of ineffective assistance of his trial counsel. Third Amended Petition, pp. 74-119. Claim 5 includes several distinct sub-claims. *See id.*

Bollinger points out that he attempted in state court to overcome the procedural bar by arguing that dismissal of the claim would be a miscarriage of justice. *See* Opposition to Motions to Dismiss and for Partial Summary Judgment, pp. 16-17. Bollinger points out that the Nevada Supreme Court rejected that argument. *See id.*; *see also* Order of Affirmance, Exhibit 295, pp. 8-10. Bollinger argues that this ruling was not an independent procedural ruling because it was interwoven with federal law, or depended upon an examination of the underlying claim. *See* Opposition to Motions to Dismiss and for Partial Summary Judgment, p. 16. Bollinger argues that, in ruling on the issue whether there would be a miscarriage of justice if this claim was not adjudicated on its merits, the Nevada Supreme Court "address[ed] the substance of the evidence supporting Mr. Bollinger's federal claim that prior counsel was ineffective." *Id.* at 17.

The assertion that the Nevada Supreme Court "addressed the substance of the evidence" allegedly supporting the claim does not show that the procedural ruling was interwoven with federal law, or that it depended upon an examination of the underlying claim. The Nevada Supreme Court did not consider the merits of Claim 5. Rather, that court addressed the issue whether there was a colorable showing that Bollinger is actually innocent or ineligible for the death penalty. *See* Order of Affirmance, Exhibit 295, pp. 8-9. That court's analysis did not constitute consideration of the merits of Claim 5.

Claim 5 is procedurally defaulted.

### iii. Claim 6

In Claim 6, Bollinger claims that his constitutional rights were violated because "the state post-conviction court, during its re-weighing analysis, failed to consider

13

mitigating evidence from the post-conviction proceedings." Third Amended Petition, p. 120.

Bollinger argues that the Nevada Supreme Court's ruling, that Bollinger did not satisfy the prejudice part of the cause and prejudice standard necessary to overcome the procedural default, was not independent of federal law. *See* Opposition to Motions to Dismiss and for Partial Summary Judgment, pp. 17-18.

However, the Nevada Supreme Court's ruling regarding this claim was clearly based solely on procedural grounds. Although the Nevada Supreme Court discussed a part of the merits of the claim ─ the issue of prejudice ─ that analysis was plainly for the purpose of demonstrating that Bollinger could not overcome the procedural default by a showing of cause and prejudice. The Nevada Supreme Court rested its decision, affirming the dismissal of Bollinger's claim, on independent state procedural grounds. *See Moran v. McDaniel*, 80 F.3d 1261, 1269 (9th Cir.1996).

Claim 6 is procedurally defaulted.

### iv.     Claim 12

In Claim 12 of his third amended petition, Bollinger claims that his constitutional rights were violated "due to the use of the unconstitutionally vague aggravating factor that the murder was committed to avoid or prevent lawful arrest." Third Amended Petition, p. 149.

Bollinger argued in state court that "the failure to consider his claim that the preventing-a-lawful-arrest aggravator is invalid resulted in a fundamental miscarriage of justice because there was no evidence that he murdered the victims in an attempt to avoid a lawful arrest." Order of Affirmance, Exhibit 295, p. 9. The Nevada Supreme Court rejected that miscarriage-of-justice argument, ruling as follows:

> This court has already determined in its mandatory review of the death sentence under NRS 177.055(2) that the evidence supported the finding of the aggravating circumstances. [*Bollinger v. State*, 111 Nev. 1110, 1117, 901 P.2d 671, 676 (1995).] As it is the law of the case that sufficient evidence was presented at trial for the jury to find that he had murdered Rose to avoid a lawful arrest, *see Hall v. State*, 91 Nev. 314, 316, 535 P.2d 797, 799 (1975), Bollinger did not show that it was more likely than

14

> not that no rational juror would have concluded that Rose's murder was committed to prevent a lawful arrest.

*Id.*

Bollinger argues that this was not a default ruling "because it indicates only that the Nevada Supreme Court previously considered and denied this claim on the merits as part of its mandatory review of Mr. Bollinger's death sentence." *See* Opposition to Motions to Dismiss and for Partial Summary Judgment, pp. 18-19. But this ruling by the Nevada Supreme Court plainly was a default ruling; the Nevada Supreme Court was clear that it was ruling on Bollinger's argument that dismissal of the claim would amount to a fundamental miscarriage of justice. Order of Affirmance, Exhibit 295, p. 9. And, looking back to its mandatory review of the death penalty on Bollinger's direct appeal, the Nevada Supreme Court did not indicate that it had previously considered and denied this claim — a claim that the preventing-a-lawful-arrest aggravator is unconstitutionally vague. Rather, the Nevada Supreme Court indicated that it found, in its mandatory review on the direct appeal, that the evidence supported the finding of the preventing-a-lawful-arrest aggravator, a finding that was relevant to the miscarriage of justice issue raised by Bollinger in attempting to overcome the procedural bar. Neither in rejecting Bollinger's miscarriage of justice argument, nor in its mandatory review on Bollinger's direct appeal, did the Nevada Supreme Court rule on the merits of this claim. The state supreme court ruled that the claim was procedurally barred and that Bollinger did not overcome the procedural bar.

Claim 12 is procedurally defaulted.

### v.   Claim 14G

In Claim 14G, Bollinger claims that his constitutional rights were violated because the trial court did not instruct the jury "that it had to find the second element of death-eligibility — that the aggravating circumstances were not outweighed by the mitigating circumstances — beyond a reasonable doubt. . . ." Third Amended Petition, p. 162.

///

The Nevada Supreme Court ruled as follows, with respect to Bollinger's procedural default of this claim:

> Bollinger argues that the district court erred by applying procedural bars to his claim that the jury was not instructed to find that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt. We conclude that this argument lacks merit. The premise behind Bollinger's argument is that the jury's weighing function in determining death eligibility is a factual determination that must be found beyond a reasonable doubt, as explained in *Johnson v. State*, 119 Nev. 787, 59 P.3d 450 (2002), and appears to be based on *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"), *Ring v. Arizona*, 536 U.S. 584, 609 (2002) (holding that capital sentencing scheme which places determination of aggravating circumstances in hands of judge violates the Sixth Amendment right to jury trial), and *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (providing that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant"). *Apprendi* and *Ring* were decided several years before Bollinger filed the instant post-conviction petition in 2005, and he wholly fails to explain his delay in raising this claim. Further, this court held in *Colwell v. State*, 118 Nev. 807, 821, 59 P.3d 463, 473 (2002), that *Ring* has no retroactive application. Therefore, the district court did not err in denying this claim as procedurally barred.

Order of Affirmance, Exhibit 295, pp. 4-5 (emphasis removed).

Bollinger argues here that "[t]he Nevada Supreme Court addressed this claim on the merits by holding that, in *Colwell v. State*, 59 P.3d 463 (Nev. 2002), it ruled that under *Ring v. Arizona*, 536 U.S. 584, 609 (2002), *Apprendi* is not retroactive." Opposition to Motions to Dismiss and for Partial Summary Judgment, p. 19. This argument, however, is belied by the ruling of the Nevada Supreme Court, quoted above. The Nevada Supreme Court ruled that "the district court did not err in denying this claim as procedurally barred." This was a ruling regarding the procedural bar — a ruling that there was no showing of good cause for Bollinger to fail to comply with the state procedural rule.

Claim 14G is procedurally defaulted.

///

///

### vi. Claims 1, 2, 7, and 11

With respect to these claims in his third amended petition, Bollinger argues that the Nevada Supreme Court ruled on the merits of the claims, and that, therefore, there is no procedural default. Opposition to Motions to Dismiss and for Partial Summary Judgment, pp. 19-20.

The Nevada Supreme Court's ruling that Bollinger refers to was as follows:

> Bollinger argues that other errors amounted to a fundamental miscarriage of justice: (1) his trial counsel proceeded under a conflict of interest, (2) his appellate counsel proceeded under a conflict of interest, (3) the trial judge was biased, (4) the district court lacked jurisdiction, (5) the jury failed to designate a degree of murder, and (6) the district court denied him a speedy trial. We conclude that these arguments lack merit. As stated above, a fundamental miscarriage of justice requires a showing of actual, factual innocence or ineligibility for the death penalty. *Mitchell v. State*, 122 Nev. 1269, 1273-74, 149 P.3d 33, 36 (2006); [*Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001)]. This standard is a factual one that is not met by merely alleging procedural errors at trial.

Order of Affirmance, Exhibit 295, pp. 10-11.

This ruling by the Nevada Supreme Court was plainly a ruling on Bollinger's miscarriage of justice argument regarding the listed claims. This was not a ruling on the merits of those claims. Bollinger's argument in this regard is without merit. Claims 1, 2, 7, and 11 are procedurally defaulted.

### F. Conclusion Regarding Procedural Default

The Court, then, concludes that all the claims that Bollinger exhausted only in his second state habeas action are barred by the doctrine of procedural default. This applies to all of Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14A, 14B, 14C, 14D, 14E, 14G, 15, 16, 17, all of Claim 18 except the claims that Bollinger's appellate counsel was ineffective for failing to raise a claim that the trial court did not have jurisdiction and that Bollinger's appellate counsel was ineffective for failing to raise a claim that the transfer of Bollinger's case from Colorado to Nevada resulted in a violation of Bollinger's right to a speedy trial, and all of Claim 19. As to those claims, respondents' motion to dismiss will be granted, and those claims will be dismissed.

///

17

The following claims, on the other hand, were exhausted in Bollinger's direct appeal or in his first state habeas action, and are not procedurally defaulted: Claim 14F, and Claim 18 to the extent it asserts claims that Bollinger's appellate counsel was ineffective for failing to raise a claim that the trial court did not have jurisdiction and that Bollinger's appellate counsel was ineffective for failing to raise a claim that the transfer of Bollinger's case from Colorado to Nevada resulted in a violation of Bollinger's right to a speedy trial. As to those claims, respondents' motion to dismiss will be denied.

## V.  COGNIZABILITY OF CLAIMS

Respondents argue that Claims 3, 4, 5E, 7, 8, 10, 14F, and 15 are not cognizable in this federal habeas action. *See* Motions to Dismiss and for Partial Summary Judgment, pp. 44-47. Much of respondents' argument in this regard goes to the merits of those claims. *See id.*

Claims 3, 4, 5E, 7, 8, 10, and 15 will be dismissed on the ground of the procedural default doctrine (*see* discussion, *supra*). The Court declines, therefore, to address respondents' arguments going to the cognizability and merits of those claims. This ruling is without prejudice to respondents reasserting such arguments at any appropriate time, if they deem it necessary to do so.

Respondents' argument with respect to the cognizability of Claim 14F is as follows:

> Claim 14F fails to state a claim cognizable in habeas corpus. It challenges the reasonable doubt instruction. That instruction is constitutional. *Ramirez v. Hatcher* 136 F.3d 1209, 1213-15 (9th Cir.1998).

Motions to Dismiss and for Partial Summary Judgment, p. 47; *see also* Reply in Support of Motions to Dismiss and for Partial Summary Judgment, p. 24. The merits of this claim will be better considered upon an answer by respondents, and further briefing as provided for in the scheduling order in this case. *See* Order entered April 3, 2012 (dkt. no. 154). The Court will, therefore, deny this portion of respondents' motion, without prejudice to respondents making this same argument regarding Claim 14F in their answer and in any further briefing on the merits of the claim.

18

## VI. WAIVER OF CLAIMS

Respondents argue that Bollinger waived parts of Claims 1, 5, 7, and 8. Motions to Dismiss and for Partial Summary Judgment, pp. 48-49; *see also* Reply in Support of Motions to Dismiss and for Partial Summary Judgment, pp. 24-25. The claims that respondents argue are waived are all claims that will be dismissed on the ground of the procedural default doctrine. The Court declines, therefore, to address respondents' arguments regarding the alleged waiver of those claims by Bollinger. This ruling is without prejudice to respondents reasserting such arguments, at any appropriate time, if they deem it necessary to do so.

It is therefore ordered that respondents' motion to dismiss (dkt. no. 215) is granted in part and denied in part. The following claims in petitioner's third amended habeas corpus petition (dkt. no. 168) are dismissed: all of Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14A, 14B, 14C, 14D, 14E, 14G, 15, 16, 17, all of Claim 18 except the claims that Bollinger's appellate counsel was ineffective for failing to raise a claim that the trial court did not have jurisdiction and that Bollinger's appellate counsel was ineffective for failing to raise a claim that the transfer of Bollinger's case from Colorado to Nevada resulted in a violation of Bollinger's right to a speedy trial, and all of Claim 19.

It is further ordered that respondents' motion for summary judgment (dkt. no. 216) is denied.

It is further ordered that respondents shall file an answer within ninety (90) days from the entry of this order, responding, on their merits, to the remaining claims in petitioner's third amended habeas corpus petition (dkt. no. 168), which are Claim 14F, and Claim 18 to the extent it asserts claims that Bollinger's appellate counsel was ineffective for failing to raise a claim that the trial court did not have jurisdiction and that Bollinger's appellate counsel was ineffective for failing to raise a claim that the transfer of Bollinger's case from Colorado to Nevada resulted in a violation of Bollinger's right to a speedy trial.

///

It is further ordered that, in all other respects, the schedule for further proceedings in this action shall be governed by the order entered by the Court on April 3, 2012 (dkt. no. 154).

DATED THIS 20th day of December 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE