UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DAVID BOLLINGER, | Case No. 2:98-cv-01263-MMD-BNW |
| Plaintiffs, | ORDER |
| v. | |
| WILLIAM GITTERE, *et al.*, | |
| Defendants. | |

**I.   SUMMARY**

In this capital habeas corpus action, the Court has granted Petitioner, David Bollinger, relief from judgment and has granted him leave to amend his petition to include his new Claim 7D. Respondents have filed a motion to dismiss (ECF No. 293), arguing that Claim 7D is procedurally defaulted. Finding that the procedural default inquiry is intertwined with the question of the merits of Claim 7D, the Court will deny the motion to dismiss, without prejudice.

**II.   BACKGROUND**

The Court denied Petitioner's habeas petition on March 4, 2015 (ECF No. 243), and entered judgment on March 5, 2015 (ECF No. 244). Petitioner appealed. While the case was pending on appeal in the Ninth Circuit Court of Appeals, on August 22, 2018, Petitioner filed in this Court a motion for leave to supplement his petition (ECF No. 256), along with the proposed supplement setting forth his Claim 7D (ECF No. 257). The following day, August 23, 2018, he filed a motion for relief from judgment. (ECF No. 259.) The Court determined that, because the case was pending on appeal, the Court was without jurisdiction to grant Petitioner's motions, and denied the motions, without prejudice, permitting Bollinger to renew them if the action was remanded from the Court of Appeals. (ECF No. 269.) The Court included in that order an indicative ruling, under

Federal Rule of Civil Procedure 62.1, that Petitioner's motion for relief from judgment raised a substantial issue. (*Id.*)

On December 20, 2018, the Court of Appeals ordered a limited remand of this case, pursuant to Federal Rule of Appellate Procedure 12.1(b), for this Court to consider Petitioner's motion for relief from judgment. (Docket Entry No. 61 in Ninth Circuit Court of Appeals Case No. 15-99007.) On February 19, 2019, Petitioner renewed his motion for relief from judgment (ECF No. 270), and his motion for leave to supplement his petition (ECF No. 271). On June 17, 2019, the Court granted those motions, vacated the judgment, and granted Petitioner leave to amend his petition to include his new Claim 7D. (ECF No. 279.)

On September 10, 2019, the Court stayed this action pending completion of further state-court proceedings, in which Petitioner was exhausting his state-court remedies relative to his new claim. (ECF No. 285.) On March 31, 2020, following completion of the state-court proceedings, the Court lifted the stay. (ECF No. 292.)

On June 29, 2020, Respondents filed the motion to dismiss that is now before the Court. (ECF No. 293.) Petitioner filed an opposition to that motion (ECF No. 295), and Respondents filed a reply (ECF No. 296).

In Claim 7D, Petitioner claims that his federal constitutional rights were violated because of judicial bias. (ECF No. 257 at 3.) In support of the claim, he alleges that four months before he was charged with capital murder, the Washoe County District Attorney ("WCDA"), Dorothy Nash Holmes, filed a judicial discipline complaint against Judge Jerry Whitehead, the judge who would preside over Petitioner's trial. (*Id.*) Attached to the judicial discipline complaint were affidavits of six WCDA employees, including Deputy District Attorney Larry Sage and Deputy District Attorney Donald Coppa, the latter of whom would prosecute Petitioner at trial. (*Id.*) The WCDA subsequently submitted a second judicial discipline complaint against Judge Whitehead. (*Id.*) Petitioner alleges that the WCDA's complaints, together with two complaints submitted by another Washoe

County District Judge, prompted an investigation of Judge Whitehead by the Nevada Commission on Judicial Discipline. (*Id.* at 3-4.)

Petitioner alleges further that while the investigation of Judge Whitehead was ongoing, the WCDA charged Petitioner with murder and Judge Whitehead was assigned the case. (*Id.* at 4.) The WCDA asked Judge Whitehead to reassign the case, but he refused. (*Id.*) The WCDA then moved to disqualify Judge Whitehead, but that motion was denied. (*Id.* at 4.) Deputy District Attorney Coppa was assigned to prosecute Petitioner at trial. (*Id.*)

Petitioner alleges that the FBI launched an investigation of Judge Whitehead, prompted, at least in part, by the WCDA's judicial discipline complaint. (*Id.*) According to Petitioner, in April 1994, a newspaper reported that the FBI was interviewing District Attorney Holmes in connection with its investigation of Judge Whitehead. (*Id.* at 4–5.)

Petitioner alleges:

> Federal officials also contacted Deputy DA Sage about the allegations in his affidavit and, at some point between March and November 1994, subpoenaed him to testify before a federal grand jury. A few weeks after that grand jury testimony, Judge Whitehead's attorney, John Ohlson, contacted Deputy DA Sage. Mr. Sage agreed to meet with Mr. Ohlson on the condition that Judge Whitehead not accompany him, but the judge showed up anyway, and both Judge Whitehead and his attorney questioned Mr. Sage about his testimony. Mr. Sage testified at the November 2017 evidentiary hearing [in Bollinger's most recent state habeas action] that this meeting made him feel "extremely uncomfortable," as he felt Judge Whitehead and his attorney were pressuring him to change his testimony[.]

(*Id.* at 5 (citations to exhibits omitted).) According to Petitioner, the federal investigation of Judge Whitehead continued until August 14, 1995, when Judge Whitehead resigned from the bench and the federal government agreed to cease its investigation. (*Id.* at 6.)

Petitioner alleges that throughout his trial, Judge Whitehead was the subject of a criminal investigation, the WCDA was actively participating in the investigation, Judge Whitehead knew the WCDA was participating in the investigation, and Judge Whitehead attempted to influence the testimony of a WCDA employee. (*Id.*) Petitioner alleges that "[t]he average judge in Judge Whitehead's position would have understood the risk of ruling in Mr. Bollinger's favor—angering the agency in control of his career, his livelihood,

and even his freedom"—and, therefore, "the risk of bias in Mr. Bollinger's case 'is too high to be constitutionally tolerable.'" (*Id.*, quoting *Rippo v. Baker*, 137 S. Ct. 905, 907 (2017) (per curiam), and citing *Echavarria v. Filson*, 896 F.3d 1118, 1130-32 (9th Cir. 2018).)

Petitioner alleges that his counsel in his first state habeas action failed to raise this claim of judicial bias because of a conflict of interest. (*Id.* at 7.) Petitioner alleges that Judge Whitehead was represented in the judicial disciplinary proceedings by attorney John Ohlson, and "in one of his final acts before resigning, Judge Whitehead appointed Mr. Ohlson's firm—'the firm of Ohlson and Springgate'—to represent Mr. Bollinger during his initial state post-conviction proceedings." (*Id.*) According to Petitioner, "although Mr. Springgate was the lead attorney on Mr. Bollinger's case, he shared responsibility with Mr. Ohlson," and he consulted with Ohlson regarding Petitioner's case. (*Id.* at 7-8.) According to Petitioner, Springgate has testified that he did not recall ever informing Petitioner of Ohlson's representation of Judge Whitehead. (*Id.* at 8.) Petitioner alleges further that Springgate advised him to abandon, in a supplemental petition in first state habeas action, a claim that had been included by Springgate in Petitioner's original petition in that case, which involved alleged judicial bias on the part of Judge Whitehead, that the claim was abandoned, and that no claim like his new Claim 7D was asserted in that action. (*Id.* at 9; ECF No. 196-1 at 33 (the claim in the original petition in Bollinger's first state habeas action, which was abandoned).) Petitioner alleges that his counsel in his first state habeas action had a conflict because of divided loyalties stemming from its representation of both Petitioner and Judge Whitehead. (ECF No. 257 at 9.) Petitioner also alleges:

> In addition, pleading a claim of judicial bias would have implicated Mr. Ohlson in Judge Whitehead's wrongdoing. Mr. Ohlson set up the meeting with Deputy DA Sage and, along with Judge Whitehead, pressured him to change his sworn testimony in front of the federal grand jury. By persuading Mr. Bollinger to drop his claim, Mr. Ohlson avoided having his own actions uncovered.

(*Id.* at 10.) Petitioner asserts that his counsel's conflict interfered with his right to pursue a claim like Claim 7D in his state habeas action, and it therefore constitutes cause to

4

overcome any procedural default of the claim. (*Id.*) Petitioner concludes that "because judicial bias deprived Mr. Bollinger of a fair trial, he would suffer actual prejudice from this Court's refusal to consider this claim." (*Id.*)

In their motion to dismiss, Respondents assert that Claim 7D is procedurally defaulted, because, in Petitioner's most recent state habeas action, the Nevada Supreme Court ruled the claim barred by the state-law statute of limitations, NRS § 34.726. (ECF Nos. 293, 294-5 (Nevada Supreme Court's Order of Affirmance in Bollinger's third state habeas action).)

### III.  DISCUSSION

A federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). The Court in *Coleman* stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id.* at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In his opposition to the motion to dismiss, Petitioner claims that he only discovered facts underlying Claim 7D—"that [WCDA] employees had actively assisted the FBI and federal prosecutors in a federal criminal investigation of the trial judge in Mr. Bollinger's capital case, Judge Jerry Whitehead … Judge Whitehead knew about this cooperation and attempted to pressure at least one deputy DA to change his testimony to a federal grand jury"—by means of an evidentiary hearing in his third state habeas action, in 2017, and that he "can overcome any alleged default based on the conflict of interest of his first state post-conviction attorneys who represented Judge Whitehead in his federal prosecution and advised Mr. Bollinger not to raise a claim of judicial bias." (ECF No. 295

at 2.) Petitioner argues that "Mr. Ohlson's ethical obligations to his former client, Judge Whitehead, along with his personal interest in avoiding scrutiny for potential witness tampering as it related to Mr. Sage, caused Mr. Ohlson to convince Mr. Bollinger not to raise a claim of judicial bias." (*Id.* at 9.) In addition, Petitioner argues that he can show cause relative to the alleged procedural default because Judge Whitehead withheld information demonstrating his bias, to wit: "the WCDA's involvement in the federal investigation, as well as his own personal attempts to influence the testimony of WCDA witnesses in that investigation." (*Id.*) Petitioner argues that he can demonstrate actual prejudice because Claim 7D is meritorious. (*Id.* at 10-14.)

In their reply in support of their motion to dismiss, Respondents argue that Bollinger does not show cause to overcome the alleged procedural default. (ECF No. 296.) However, Respondents conclude their reply by conceding that the question of prejudice, the second part of the cause and prejudice analysis, "is dependent upon the underlying merits of Claim 7D," and they state that "[s]hould this Court determine that Bollinger has established cause for his failure to previously assert this claim, then Respondents respectfully request the Court defer the issue of prejudice to allow Respondents to fully address the merits of Claim 7D in an answer." (ECF No. 296 at 4.)

The Court determines that the questions of both cause and prejudice, with respect to the alleged procedural default of Claim 7D, are intertwined with the merits of Claim 7D, such that they will be better addressed in conjunction with the merits of the claim, after Respondents file an answer responding to Claim 7D on its merits and Petitioner files a reply. The Court will, therefore, deny Respondents' motion to dismiss, without prejudice, as to the procedural default defense in their answer. The Court will set a schedule for Respondents to file a supplement to their answer, responding to Claim 7D.

**IV. CONCLUSION**

It is therefore ordered that Respondents' Motion to Dismiss (ECF No. 293) is denied.

///

It is further ordered that Respondents will have 90 days from the date of this order to file a supplement to their answer, responding to Claim 7D. In all other respects, the schedule for further proceedings set forth in the order entered March 31, 2020 (ECF No. 292) will remain in effect.

DATED THIS 2nd Day of March 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE